IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KEVIN WAYNE BROWN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 06-3245-CM |
| **RICHARD DORNEKER, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM AND ORDER**

Plaintiff Kevin Wayne Brown brings this lawsuit against defendants Richard Dorneker, Kathy Swift, Cindy Taylor, and Jay Whitney. Plaintiff alleges the following three causes of action, each arising under the Eighth Amendment to the United States Constitution: (1) failure to protect from harm; (2) failure to provide adequate medical care; and (3) cruel and unusual punishment. This matter is before the court on the parties' cross motions for summary judgment (Docs. 70 and 73).

**I.    Factual Background**

The facts of this case are difficult to discern because plaintiff did not follow the court's rules regarding motions for summary judgment. He asserts facts and rebuts defendants' facts throughout his briefing without citing to the record. The court acknowledges that plaintiff appears pro se and his pleadings are entitled to a somewhat less stringent standard than pleadings filed by a licensed attorney. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But, this does not excuse plaintiff from the burden of coming forward with evidence to support his claims as required by the Federal Rules of Civil Procedure and the local rules of this court. *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988). Even a pro se plaintiff must present some "specific factual support" for his allegations. *Id.* Plaintiff fails to support his material factual allegations with

the record. He relies on unsworn letters and conclusory allegations, neither of which are admissible for summary judgment purposes. Fed. R. Civ. P. 56(e)(1) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."); Fed. R. Civ. P. 56(e)(2) (explaining that when opposing a proper summary judgment motion, "an opposing party may not rely merely on allegations or denial in its own pleading"); *Mohamed v. Tattum*, 380 F. Supp. 2d 1214, 1222 (D. Kan. 2005) (finding that a handwritten letter is not a sworn affidavit and thus does not enjoy that evidentiary weight).

After reviewing the record—including the *Martinez* report,[1] plaintiff's sworn complaint, and properly submitted affidavits and exhibits—and the parties' briefs, the court construes the facts in the light most favorable to plaintiff. Defendants are employees of the Chase County Detention Center (CCDC). Richard Dorneker is the Chase County Sheriff; Kathy Swift is the CCDC supervisor; Jay Whitney is the Jail Administrator; and Cindy Taylor is a CCDC nurse. Plaintiff was a Johnson County inmate.

Beginning on June 27, 2006, plaintiff was temporarily boarded at CCDC pursuant to an agreement between Chase County and Johnson County. He was assigned to cell 5 in L-pod with Everett Jackson, a Chase County inmate. While at CCDC, Mr. Jackson told defendant Taylor that

---

[1] In *pro se* prisoner litigation, the Tenth Circuit endorses the use of a "*Martinez* report," a record compiled by prison officials of the factual investigation of the events in the case. *See Martinez v. Aaron,* 570 F.2d 317, 319 (10th Cir. 1978). The Martinez report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991)). Likewise, the pro se prisoner's complaint, when sworn and made under a penalty of perjury, is also treated as an affidavit. *See id.* Both serve as evidence for a summary judgment determination. *See id.*

he had previously taken Seroquel and had been off the medication for two months.  Mr. Jackson also told defendant Swift and defendant Whitney that he needed Seroquel for mental illness and that he would hurt someone if he did not get his medication.  According to Mr. Jackson's inmate health history form, he had no signs of mental illness but did show signs of possible drug use.  Although not a mental health professional, defendant Whitney did not believe that Mr. Jackson's behavior showed signs of mental illness or risk of an assault.  Mr. Jackson was overly aggressive when playing sports, but the inmates did not report it to the CCDC staff.  Neither defendant Swift nor defendant Whitney had knowledge of Mr. Jackson being angry or violent over his medication.  And neither defendant receive any complaints or had any problems with Mr. Jackson before June 10, 2006.

On July 8, 2006, plaintiff accused Mr. Jackson of taking his candy bar.  The two argued and Mr. Jackson told plaintiff that plaintiff did not want to see Mr. Jackson go off because without the medication he could snap at any time and somebody would get hurt.  Mr. Jackson moved into a different cell that evening.  Mr. Jackson told the night jailer that if he went back to cell 5, he and plaintiff were going to get into it.  Mr. Jackson stayed in the other cell until Monday, July 10.  On July 10, plaintiff told defendant Swift that he and Mr. Jackson were having problems and that he did not want to share a cell with Mr. Jackson.  He asked her to move him if she put Mr. Jackson back in cell 5 because he did not want Mr. Jackson to go off on him.  Plaintiff complained about Mr. Jackson to defendant Swift only.  Defendant Swift put Mr. Jackson back in cell 5.

At about 10:50 p.m. that evening, plaintiff and Mr. Jackson argued.  A little bit later, as Jailor Jo Schrater came into the pod, Mr. Jackson grabbed a wooden mop handle.  Mr. Jackson ran up the stairs towards plaintiff and hit plaintiff's left hand and arm five or six times with the mop handle.  Plaintiff put his hands up to block his face.  The night jailer yelled, "No, Mr. Jackson don't hit Mr.

-3-

Brown no more." Mr. Jackson broke the wooden mop handle and stopped hitting plaintiff. After the incident, Ms. Schrater placed plaintiff on lockdown for six days for fighting with Mr. Jackson. Plaintiff's lockdown began at 10:55 on July 10 and was to end at 10:55 on July 16, but plaintiff left CCDC before his lockdown ended. Mr. Jackson was also placed in lockdown—he received six days for fighting with plaintiff and eighteen days for using a weapon. When on lockdown, inmates are restricted to their cells twenty-three hours a day with one hour out for exercise.

When Ms. Schrater checked on plaintiff that night, he told her that his arm and hand hurt and requested pain medication. He also told her that he needed emergency care. Ms. Schrater brought plaintiff an ice pack, but no pain medication. She told him that CCDC did not have a nurse on staff and that all she could do was pass his request on to defendant Swift in the morning. The next morning, July 11, 2006, plaintiff was in pain and his hand was swollen. He requested to see a nurse and to speak with defendant Swift or defendant Whitney several times. The jailors told him that defendants were busy. Jailor Lang provided plaintiff with another ice pack. Plaintiff told Ms. Lang that he needed to see a nurse and requested Tylenol. She told him he needed to take the issue up with defendant Swift or defendant Whitney. At 6:00 p.m. that evening, plaintiff filed a grievance requesting medical care and protesting his lockdown. Defendant Whitney received the grievance on July 12. Plaintiff saw the nurse, defendant Taylor, the morning of July 12, 2006. Defendant Taylor told plaintiff that his hand was broken and that she would give him pain medication and ice. Plaintiff received one dose of pain medication on July 13, 2006. CCDC nurses do not have authority to order prescription medications, X-rays or non-emergency medical evaluations for Johnson County inmates. Defendant Taylor contacted Johnson County regarding plaintiff's condition. The Johnson County nurse told her to have plaintiff elevate his hand and use ibuprofen for pain. The nurse also told defendant Taylor that plaintiff would be transferred to Johnson County in two days. On July 13,

-4-

2008, plaintiff's hand was swollen and he was "crying behind the pain." Plaintiff was transferred to Johnson County the next day, July 14. He received pain medication at Johnson County.

Plaintiff alleges additional facts, but fails to support his allegations with the record. The court has reviewed the record and finds that plaintiff's factual allegations are not properly in the record—plaintiff cannot rely on conclusory allegations nor unsworn inmate letters or affidavits. But, as explained below, even if plaintiff's unsupported factual allegations are taken as true, plaintiff cannot establish that defendants violated the Eighth Amendment.

## II. Standards for Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *see Adler*, 144 F.3d at 671 n.1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

**III.    Discussion**

  *A.     Plaintiff's Cross Motion for Summary Judgment*

Plaintiff contends he is entitled to summary judgment, but focuses on rebutting defendants' motion for summary judgment. Defendants argue that plaintiff's cross motion for summary judgment is time-barred.

The dispositive motion deadline, as set forth in the pretrial order (Doc. 69), was December 13, 2007. Plaintiff filed his cross motion for summary judgment on December 27, 2007. Plaintiff did not seek leave to file his motion out of time. "A party's pro se status does not relieve him from complying with the court's procedural requirements." *Barnes v. United States*, 173 F. App'x 695, 697 (10th Cir. 2006) (citations omitted); *see also Santistevan v. Colo. Sch. of Mines*, 150 F. App'x 927, 931 (10th Cir. 2005) (holding that a pro se litigant must follow the same rules of procedure as other litigants). "[I]gnorance of the law by incarcerated pro se litigants does not excuse prompt

filings." *Tafoya v. McCall*, 76 F. App'x 266, 269 (10th Cir. 2003). Additionally, plaintiff's motion does not follow the court's local rules—the motion does not "refer with particularity to those portions of the record upon which [he] relies." D. Kan. Rule 56.9(a). Because plaintiff filed his motion out-of-time and failed to support it with the record, plaintiff's motion is denied.

### *B.     Defendants' Motion for Summary Judgment*

Defendants argue that they are entitled to summary judgment on plaintiff's claims for the following reasons: (1) plaintiff cannot establish the required elements for his Eighth Amendment claims; (2) defendants are entitled to qualified immunity; and (3) defendants Dorneker, Whitney, and Taylor did not personally participate in the alleged violations. Because it is dispositive of the case, the court will first consider whether plaintiff can establish the elements required for each of his claims.

#### 1.     **Failure to Protect**

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners, but prison officials are not expected to prevent every injury suffered by one prisoner at the hands of another. *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994). "The failure of a prison official to protect an inmate from attacks by other inmates rises to the level of an Eighth Amendment violation only if the evidence shows defendants acted with 'wanton or obdurate disregard for or deliberate indifference to' the protection of prisoners' lives." *Rider v. Werholtz*, 548 F. Supp. 2d 1188, 1195 (D. Kan. 2008) (citing *Harris v. Maynard*, 843 F.2d 414, 416 (10th Cir. 1988); *Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir.1992)). The test for deliberate indifference has an objective and subjective component. *Id.* Under the objective component, the harm suffered must be sufficiently serious to implicate the Eighth Amendment. *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). The subjective component is met if a prison official both

knows of and disregards an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. "Deliberate indifference requires more than a showing of simple or heightened negligence." *Verdecia*, 327 F.3d at 117 (citations omitted).

Defendants do not dispute the objective component—that plaintiff's harm was sufficiently serious, but instead argue that plaintiff cannot meet the subjective component. The subjective component "requires that the defendant's conduct is in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, or that the conduct disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Id.* 327 F.3d at 1176 (internal quotations omitted). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Plaintiff alleges that defendants failed to protect him from Mr. Jackson. Even when construed in the light most favorable to plaintiff, the facts are insufficient to establish that any defendant was deliberately indifferent to plaintiff's health or safety. Mr. Jackson had not been violent prior to the incident with plaintiff. He had requested medication, but nothing in the record suggests the request was valid. His inmate health history indicates no signs of mental illness and suggests possible drug use. Although the inmates thought he was overly aggressive during sports, they did not report it to the jail staff. Defendants heard Mr. Jackson make several general threats about what would happen if he did not receive medication. The threats never specified whether he was threatening inmates or prison guards, and he never threatened a specific individual. The day of the incident plaintiff told defendant Swift that he and Mr. Jackson were having problems and that Mr. Jackson threatened him. Plaintiff did not provide specific information about the alleged threat or identify specific behavior that made plaintiff feel threatened. Plaintiff did not complain to any

one else about Mr. Jackson's threats. The threats Mr. Jackson made on the day of the incident continued to be general in nature and similar to the threats he had been making for the previous two weeks. Mr. Jackson and plaintiff had been cellmates for two weeks without incident. Nothing in the record suggests that defendants' failure to assign Mr. Jackson to another cell or separate him from the general population placed plaintiff in danger or created an excessive risk that plaintiff would be harmed by Mr. Jackson. In fact, the incident occurred in the common area, not in their cell.

Without citing to the record, plaintiff alleges that when defendant Swift told Mr. Jackson to go back to cell 5, Mr. Jackson told her that someone will get "fucked up." Even if true, this exchange does not raise to the level of an obvious and specific threat. Similarly, plaintiff's unsupported allegations that the jailors did not try to stop the fight do not constitute deliberate indifference. The record establishes that Ms. Schrater yelled at Mr. Jackson to stop. And there is no indication of how long the fight lasted or whether defendants were in the pod and in a position to stop the fight. *See, e.g., McDaniels v. McKinna*, 96 F. App'x 575, 580 (10th Cir. 2004) (holding that an officer's slow reaction to a fight was not deliberate indifference). Nor do plaintiff's other unsupported allegations create deliberate indifference—that defendant Swift apologized to L-pod and said she should have taken Mr. Jackson seriously. The court looks at whether the officer knew of the risk *at the time of the incident*, not whether the officer would have acted differently given that the incident occurred. Accordingly, even if plaintiff's unsupported allegations were true, he could not prevail on this claim.

The court finds that defendants did not disregard "a known or obvious risk that was so great as to make it highly probable that harm would follow," and thus, they did not act with deliberate indifference toward plaintiff's health and safety. *Verdecia*, 327 F.3d at 117.

### 2. Cruel and Unusual Punishment

Plaintiff alleges that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by placing him in lockdown after the incident with Mr. Jackson. The Eighth Amendment requires that prison officials provide humane conditions of confinement, including ensuring that inmates receive adequate food, clothing, shelter, and medical care. *Farmer*, 511 U.S. at 832. The Eighth Amendment does not mandate that prison officials make prisons comfortable. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Indeed, jail conditions may even be restrictive or harsh and not violate an inmate's constitutional rights. *Id.* at 347. A plaintiff making a claim for unconstitutional conditions of confinement must allege and prove an objective component and a subjective component. *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001). To demonstrate the objective component, a plaintiff must show that prison officials deprived him of the "'minimal civilized measure of life's necessities.'" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes*, 452 U.S. at 347). The subjective component requires the court to look to the mental state of prison officials, who must have acted with "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 300–02). As explained above, this component is met by demonstrating that the official was aware of facts from which the inference that a substantial risk of serious harm exists could be drawn and that the official drew the inference.

The conditions alleged by plaintiff do not violate the Eighth Amendment. Plaintiff was placed in lockdown for six days for fighting with Mr. Jackson, but he was only in lockdown four days before he was transferred back to Johnson County. While in lockdown, plaintiff was in his cell for twenty-three hours a day with one hour out for exercise. Plaintiff does not allege that he was deprived of food, clothing, heat, air conditioning, or any necessity. Inactivity, lack of companionship, and a low level of intellectual stimulation are not cruel and unusual punishment. *Hill v. Pugh*, 75 F. App'x 715, 721 (10th Cir. 2003). Furthermore, plaintiff's disciplinary

confinement does not constitute cruel and unusual punishment. *See Talley v. Burnell*, 97 F.3d 1465 (10th Cir. 1996) (recognizing that punitive segregation does not raise an Eighth Amendment claim as long as it does not involve unnecessary infliction of pain or is not grossly disproportionate). Prison administrators are accorded broad flexibility in matters of internal security. *Walling v. Slusher*, 976 F. Supp. 1402, 1405 (D. Kan. 1997) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)). Placement decisions are subject to judicial review only when there is a clear abuse of discretion. *Id.* (citing *Marchesani v. McCune*, 531 F.2d 459, 462 (10th Cir. 1976)). Both plaintiff and Mr. Jackson were disciplined for the July 10, 2006 incident—plaintiff was placed on lockdown for six days and Mr. Jackson was locked down for twenty-four days. Nothing in the record suggests that plaintiff's disciplinary segregation involved unnecessary infliction of pain or was grossly disproportionate.

Within his summary judgment briefing, plaintiff also alleges defendant Swift put him in lockdown in retaliation for threatening to file a lawsuit; however, plaintiff did not file a retaliation claim or raise such allegations in his complaint. He raises the allegations in his summary judgment briefing, but does not cite to the record for support. And in fact, the record does not support plaintiff's allegations. Jailor Schrater put plaintiff on lockdown at 10:55 p.m. on July 10, 2006. According to plaintiff, he threatened defendant Swift with a lawsuit on July 12—after he was on lockdown. Plaintiff cannot meet his burden. Therefore, the court finds that defendants are entitled to summary judgment on plaintiff's claim.

### **3.**     **Deprivation of Medical Care**

Plaintiff alleges he suffered great pain due to the delay in medical care and that the delay aggravated his injury. "'In order to state a cognizable claim [that he has been denied adequate medical treatment in violation of the Eighth Amendment], a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Wallin v. CMI*,

269 F. App'x 820, 824 (10th Cir. 2008) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Again, there is an objective component and a subjective component. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

To meet the objective component, the injury or deprivation must be sufficiently serious. *Farmer*, 511 U.S. at 834. "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Sealock*, 218 F.3d at 1209 (citing *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.1999)). Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm. *See Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). Substantial harm includes lifelong handicap, permanent loss, or considerable pain. *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001). Under the subjective component, prison officials must consciously disregard a known, serious risk to inmate health or safety. *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). "[I]nadvertent or negligent failure to provide medical care, however serious the consequences, does not rise to 'deliberate indifference to serious medical needs' and is not a constitutional violation." *Wallin*, 269 F. App'x at 826 (citations omitted).

Plaintiff alleges that the delay caused substantial harm because he was in pain during the few days following the incident.[2] "Where pain is the claimed harm, 'not every twinge . . . suffered as a result of delay in medical care is actionable.'" *Beers v. Ballard*, 248 F. App'x 988, 992 (10th 2007)

---

[2] Plaintiff also alleges, without citing to the record, that the delay in medical treatment caused him to lose most use of his hand. The court has reviewed the record and finds no support for plaintiff's allegations. But even if this allegation were supported by the record, plaintiff's claim would fail because he cannot meet the subjective component of the claim.

-12-

(quoting *Sealock*, 218 F.3d at 1210).  The record here does not suggest plaintiff's discomfort as a result of not receiving pain medication was of sufficient severity to be substantial.  *Cf. id.* (recognizing that "twelve hours of tormenting, debilitating pain accompanied by severe vomiting" and "considerable pain [experienced] while [a] finger continued to rot," constitute substantial harm) (citations and quotations omitted).  The record does not indicate where plaintiff placed his discomfort on a pain scale or whether this was a recurring discomfort or a debilitating pain.  Moreover, defendants treated his pain—he receive ice packs on July 10 and July 11—just not in the manner he preferred.  *Perkins v. Kansas Dept. of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation.").  Based on the record, the court finds that plaintiff cannot establish the objective component of his deprivation of medical care claim.

Nor can plaintiff establish the subjective component.  After reviewing the record, the court finds that defendants were not deliberately indifferent to plaintiff's injury.  Prison officials gave him ice packs the first two days.  CCDC officials received his grievance requesting medical treatment on July 12 and took him to see the nurse that day.  The nurse contacted the Johnson County nurse and followed that nurse's instructions until defendant could be transferred back to Johnson County.  Defendants' decisions regarding plaintiff's treatment are classic examples of matters for medical judgment.  "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107.

The court is, however, concerned about defendants' reaction to plaintiff's pain—specifically the delay in providing him pain medication.  Two days is a long time to go without pain medication, especially when plaintiff began requesting it the night of the incident.  Defendants' conduct is questionable and may even rise to the level of negligence, but, in this specific case, the record cannot

support a finding of deliberate indifference.  And while the court does not condone defendants' lackadaisical attitude toward plaintiff's injury, negligence is insufficient to state a valid Eighth Amendment claim against defendants.  *Id.* at 106.

The court finds plaintiff's general and conclusory allegations are insufficient to show that there is a genuine issue of material fact.  Based on the record before the court, plaintiff cannot prevail on his claims.  Defendants' motion is granted.

**IT IS THEREFORE ORDERED** that plaintiff's "Motion in Letter Style to Move to Dismiss and Quash [70] Motion Summary Judgement [sic] and Grant Cross Summary Judgement [sic] or Allow Case to Proceed Through the Court Case No. 06 3245" (Doc. 73) is denied.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 70) is granted.

Dated this 8th day of August 2008, at Kansas City, Kansas.

> **s/ Carlos Murguia**
> **CARLOS MURGUIA**
> **United States District Judge**